UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                                          |   |                |
|------------------------------------------|---|----------------|
| THOMAS GUILFOILE,                        ) |                |
|                                          ) |                |
| Plaintiff,                               ) |                |
|                                          ) |                |
| v.                                       ) |                |
|                                          ) | No. 16-cv-10652 |
|                                          ) |                |
| SHIELDS PHARMACY, LLC, et al.,           ) |                |
|                                          ) |                |
| Defendants.                              ) |                |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                 **January 21, 2020**

### I.  Introduction

Plaintiff Thomas Guilfoile ("Guilfoile") has filed this lawsuit against Defendants Shields Pharmacy, LLC, UMass Memorial Shields Pharmacy, LLC, Shields Pharmacy Equity, LLC, Shields Specialty Pharmacy Holdings, LLC, collectively d/b/a Shields Pharmacy Services, a/k/a Shields Health Solutions ("the Shields Entities") and John M. Shields, Sr., a/k/a Jack Shields ("Shields"), in his individual capacity (collectively, "Defendants"). D. 29. Guilfoile alleges that Defendants retaliated against him in violation of the federal False Claims Act, 31 U.S.C. § 3730(h) and also asserts various state law claims against Defendants. D. 29 ¶¶ 99-163. Shields now brings a counterclaim against Guilfoile alleging abuse of process. D. 89 at 25-46. Guilfoile has moved to dismiss the counterclaim pursuant to Fed. R. Civ. P. 12(b)(6). D. 91. For the following reasons, the Court DENIES Guilfoile's motion to dismiss Shields' counterclaim.

### II.  Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim

1

for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). The Court will dismiss a pleading that fails to include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "To avoid dismissal, a [counterclaim] must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" García-Catalán v. United States, 734 F.3d 100, 102 (1st Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Nor does a [counterclaim] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (second alteration in original) (quoting Twombly, 550 U.S. at 557). "In determining whether a [pleading] crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.'" García-Catalán, 734 F.3d at 103 (second alteration in original) (citation omitted). "This context-specific inquiry does not demand 'a high degree of factual specificity.'" Id. (citation omitted).

### III.  Factual Background

The following summary is based upon the allegations in the amended counterclaim, D. 89, which are accepted as true for the consideration of the motion to dismiss.

Shields founded and holds ownership interests in the Shields Entities, a specialty pharmacy business. D. 89 ¶¶ 6, 8. Shields and Guilfoile met in the early 2000s as neighbors in Duxbury, Massachusetts. D. 89 ¶ 7. In 2013, Shields and Guilfoile often discussed Shields' pharmacy business and Shields told Guilfoile that he was looking to hire an executive at the Shields Entities who had operational, financial and business development experience. D. 89 ¶ 8. Based on

discussions about Guilfoile's prior experience and capabilities, Shields hired Guilfoile to work at the Shields Entities on or around August 26, 2013.  D. 89 ¶ 12.

Shields alleges that there were numerous deficiencies in Guilfoile's work, D. 89 ¶ 13, and that Guilfoile made demands to Shields and threatened to involve the Shields Entities' boards of directors if he did not get his way.  D. 89 ¶¶ 14-15.  Shields terminated Guilfoile on December 22, 2015.  D.89 ¶ 16.  Shields alleges that Guilfoile contacted him on December 28, 2015 and pleaded with him to reinstate his employment, but that Shields refused to do so.  D. 89 ¶ 18.  On January 3, 2016, Guilfoile emailed Shields and stated that he felt the relationship between the two had soured because Guilfoile had objected to practices at the Shields Entities that Guilfoile alleged may be illegal.  D. 89 ¶ 24.  These practices included an alleged kickback scheme entered into with a consultant for the Shields Entities, the use of company funds and personnel to secure private equity deals for another of Shields' companies, which Guilfoile alleged constituted a fraud on the Shields Entities' shareholders, and the Shields Entities' inclusion of false representations in contracts with hospitals.  Id.; D. 89-1 at 2-3.  In the letter, Guilfoile asked Shields to "honor the terms" of his employment contract by paying him a year of compensation as severance and recognizing his vested ownership interest in the Shields Entities.  D. 89-1 at 3.  Guilfoile stated that he wished to "part ways amicably" and that he preferred to resolve the situation without getting lawyers involved.  Id.  Guilfoile then stated that, if he did not receive a response from Shields by January 5, 2016 indicating that Shields agreed, Guilfoile would retain counsel and seek to recover damages in litigation.  Id.  Shields refused Guilfoile's demands.  See D. 89 ¶¶ 26-27.

On January 7, 2016, Guilfoile sent an email to members of the board of directors of the Shields Entities, a top executive at an entity that partnered with the Shields Entities and others stating that he had been retaliated against by Shields based on his objection to the practices at the

Shields Entities that he considered potentially illegal and attaching the January 3, 2016 email he had sent to Shields. D. 89 ¶ 27. Shields alleges that Guilfoile's claims regarding potential illegal activities were false and that Guilfoile was aware that they were false. D. 89 ¶ 28. A few months later, on April 1, 2016, Guilfoile filed suit against Defendants in this Court. D. 89 ¶ 34. Guilfoile and his counsel then worked with a media company, Powers MediaWorks, LLC, to release a press statement announcing and detailing Guilfoile's lawsuit against Shields. D. 89 ¶¶ 40-46. Shields alleges that the press release, which was widely circulated, included "false and defamatory" claims about Shields and the Shields Entities accusing them of engaging in potentially illegal activities. D. 89 ¶¶ 52-53.

On April 5, 2016, the same day that the press release was disseminated, Guilfoile sent what Shields has characterized as a "mass e-mail" to individuals in the Duxbury community where both Guilfoile and Shields live, as well as to Shields' son and Shields Entities employees, that discussed his lawsuit and included a link to the press release. D. 89 ¶¶ 59-60. Shields alleges that the filing of Guilfoile's lawsuit has caused Shields "significant damages, including to his business, his business reputation, his personal reputation, expenditure of attorney's fees, and emotional distress." D. 89 ¶ 68.

## IV. Procedural History

Guilfoile instituted this action on April 1, 2016. D. 1. Following the filing of motions to dismiss by Defendants (D. 17 & D. 24), Guilfoile filed an amended complaint on June 10, 2016. D. 29. Defendants then filed renewed motions to dismiss the amended complaint. D. 32; D. 34. This Court allowed the motion to dismiss as to Guilfoile's False Claims Act claim and dismissed without prejudice his state claims because, having dismissed the federal claim, the Court declined to exercise supplemental jurisdiction over them. D. 55 at 5-17. Guilfoile appealed to the First

4

Circuit, D. 66, which affirmed the dismissal in part and vacated it in part.[1] D. 69. Guilfoile filed a second amended complaint on April 26, 2019. D. 80. Defendants filed their amended answer with Shields' amended counterclaim at issue here, alleging abuse of process, on July 9, 2019.[2] D. 89. Guilfoile has now moved to dismiss the amended counterclaim. D. 91. The Court heard argument on the motion and took the matter under advisement. D. 111.

V.  **Discussion**

   A.  **Legal Standard**

To state a claim for abuse of process, Shields must show that (1) process was used (2) the use was motivated by an ulterior purpose and (3) he suffered damages as a result. See MHA Fin. Corp. v. Varenko Invs. Ltd., 583 F. Supp. 2d 173, 178 (D. Mass. 2008) (citing Jones v. Brockton Pub. Mkts., Inc., 369 Mass. 387, 389 (1975)). Process means "causing papers to issue by a court 'to bring a party or property within its jurisdiction.'" Silvia v. Building Inspector of W. Bridgewater, 35 Mass. App. Ct. 451, 453 n.4, (1993) (quoting Jones, 369 Mass. at 390). Abuse of process involves the "malicious use of legal process to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed." LaFrenier v. Kinirey, 478 F. Supp. 2d 126, 142 (D. Mass. 2007) (quoting Carroll v. Gillespie, 14 Mass. App. Ct. 12, 26 (1982)).

---

[1] The First Circuit affirmed this Court's dismissal of Guilfoile's False Claims Act claim based on a contractual breach ("the 24/7 call center issue") and vacated and remanded Guilfoile's claims related to the Anti-Kickback Statute, determining that Guilfoile had plausibly alleged facts sufficient to support a False Claims Act retaliation claim based on an Anti-Kickback Statute violation. See D. 69 at 29-30.

[2] Shields and Shields Pharmacy LLC have also filed a complaint against Guilfoile in Massachusetts state court alleging defamation and tortious interference. See D. 92-3 at 2. They sought to amend the complaint in that action to add a claim of abuse of process. See id. at 8. The state court, however, denied the motion to amend, holding that, "[b]ecause the abuse of process claim arises out of the same transaction or occurrence as [the present action], it is a compulsory counterclaim" and should be filed in this action. Id. at 11.

Ulterior purpose exists where a party "institut[es] a civil action to achieve a collateral purpose other than winning the lawsuit." Am. Mgmt. Servs., Inc. v. George S. May Int'l Co., 933 F. Supp. 64, 69 (D. Mass. 1996) (citing Silvia, 35 Mass. App. Ct. at 453-54). The ulterior motive, however, must be "more than the intent to harass; there must be intention to use process for coercion or harassment to obtain something not properly part of the suit." Broadway Mgmt. Servs., Ltd. v. Cullinet Software, Inc., 652 F. Supp. 1501, 1503 (D. Mass. 1987).

### B. Shields' Allegations of Abuse of Process

Guilfoile initiated this lawsuit, see D. 1, so the first element of process has been satisfied. As to the second element, Shields alleges that Guilfoile initiated the lawsuit based on the following ulterior motives besides winning the lawsuit:

> to (i) destroy Shields' personal and business reputation; (ii) spread false information about Shields alleged in support of the federal claims so as to extort a settlement of earlier monetary and equity demands and the state-based contract and employment claims (which are collateral to the proper purpose of the federal claims), (iii) publicly embarrass and harass Shields, especially among his friends, employees, and within his local community; (iv) discourage third parties from conducting business with Shields; (v) interfere with Shields' existing and prospective business relationships; (vi) seek and obtain emotional satisfaction to himself by, among other things, retaliating against Shields for his refusal to concede to the earlier extortionate demands; and (vii) generate his own business opportunities, including by increasing his chances of potential future employment.

D. 89 ¶ 67. Guilfoile counters that these alleged ulterior motives are insufficient to survive a motion to dismiss because (i), (iv) and (v) fail to allege a collateral advantage to Guilfoile that could result from harming Shields' business as Guilfoile and Shields are not competitors and that (vii) is insufficient because it is "conclusory." D. 92 at 16-18. Guilfoile also argues that ulterior motives (i), (ii), (iii) and (vi) are insufficient because "a desire for revenge harm, spite, or vindictiveness" are not ulterior motives that can support an abuse of process claim. D. 92 at 19-20 (citing Psy-Ed Corp. v. Klein, 459 Mass. 697, 714-15 (2011)). Finally, Guilfoile argues that

6

(vi) is insufficient because it is identical to the remedy Guilfoile seeks in the lawsuit against the Shields Entities and is, therefore, not an ulterior motive. D. 92 at 20-22.

To state a plausible abuse of process claim, Shields needs to allege just one such plausible ulterior motive. Shields' allegations that Guilfoile filed the lawsuit with the ulterior motive of destroying Shields' business and personal reputation (i), discouraging third parties from doing business with Shields (iv) and interfering with current and future business relationships (v), at least, are sufficient to survive a motion to dismiss. Davidson v. Yihai Cao, 211 F. Supp. 2d 264, 289 (D. Mass. 2002) (noting that "the First Circuit 'recognize[s] that the desire to injure a business or business reputation is an improper ulterior motive sufficient to state a claim for abuse of process'") (quoting General Electric Company v. Lyon, 894 F. Supp. 544, 552 (D. Mass. 1995)) (alteration in original). Guilfoile is correct that harm, spite, and vindictiveness cannot alone support an abuse of process claim; however, Shields has alleged more than simply ill will. See Empire Today, LLC v. Nat'l Floors Direct, Inc., 788 F. Supp. 2d 7, 23 (D. Mass 2011) (stating that "[f]iling a groundless claim or having an improper motive of vexation, harassment, or annoyance is relevant but does not alone suffice to demonstrate ulterior purpose") (internal quotation marks omitted). For one example, Shields alleges that Guilfoile emailed partners of the Shields Entities stating that his termination was not "the result of mere differences or disagreements between [Shields] and [Guilfoile]," but that it was "illegal retaliation by [Shields] for [Guilfoile's] opposition of [sic] his unethical and potentially illegal business practices." D. 89 ¶ 27; D. 89-2. Shields also alleges that, following the filing of this suit, Guilfoile and his attorneys engaged a public relations company to craft and disseminate a press release that discussed the lawsuit against Shields, Guilfoile's allegations of retaliation against Shields, and Guilfoile's claims that Shields engaged in unlawful and improper conduct. D. 89 ¶¶ 40-52; see D. 89-3. Shields

7

alleges that, in addition to disseminating the press release nationally, Guilfoile specifically targeted Quincy and Worcester so that the press release would be read by Shields Entities employees and potential clients. D. 89 ¶¶ 47-49, 54. Shields further alleges that Guilfoile distributed the press release in a "mass e-mail" that included Shields Entities employees and Shields' son as recipients. D. 89 ¶¶ 59-60; see D. 89-6. Although emails and the press release are not considered "process" for the purpose of the abuse of process claim, they are relevant to the consideration of whether Guilfoile had an ulterior motive for initiating that process, namely this lawsuit. See Empire Today, LLC, 788 F. Supp. 2d at 23. Such factual allegations here that Guilfoile seeks to use process to destroy Shields' personal and business relationships go beyond mere personal animosity and, in context, are sufficient to support a claim of abuse of process.

Further, Shields' claim that Guilfoile filed the lawsuit to generate his own business opportunities and increase his opportunities for future employment also supports a claim of abuse of process. Shields elaborates that Guilfoile took steps to control the narrative around his departure from the Shields Entities and that he sought to increase his future employment opportunities by framing himself as a "whistleblower" in the complaint he filed against the Shields Entities. See D. 89 at Introduction. As discussed above, Shields has alleged facts indicating that, following his termination, Guilfoile emailed partners of the Shields Entities to frame his termination in a manner that protected his personal reputation at the expense of Shields. See D. 89, ¶ 27. Contrary to Guilfoile's argument, these allegations are not conclusory and sufficiently allege a collateral advantage Guilfoile sought in addition to the remedies sought in the lawsuit. See Davidson, 211 F. Supp. 2d at 289-90 (denying motion to dismiss an abuse of process claim where a party alleged, in part, that a lawsuit was filed against them and publicized through a press release to damage their reputation and publicly humiliate them).

8

Guilfoile also argues that the counterclaim must be dismissed because Shields has failed to provide evidence of Guilfoile's ulterior motives. D. 92 at 22-24. At the motion to dismiss stage, however, Shields is not required to prove that Guilfoile filed the lawsuit with an improper motive or to have produced evidence of an improper motive. General Elec. Co., 894 F. Supp. at 552. "Rather, [Shields] must simply plead some set of facts that would support [his] contention that [the] suit was brought with ulterior motives." Id. Shields has sufficiently pled facts supporting his claim that Guilfoile abused process to accomplish ulterior motives separate and apart from the remedies properly sought in his lawsuit.

### C. Damages

Guilfoile argues that the abuse of process claim must be dismissed because Shields has failed to adequately plead damages, the third element of an abuse of process claim. See D. 92 at 24-25. In support of this argument, Guilfoile cites to Children's Hospital Corporation v. Cakir, 183 F. Supp. 3d 242 (D. Mass. 2016), in which this Court granted a motion to dismiss an abuse of process counterclaim where the claimant alleged in "conclusory fashion that he suffered 'damage'" but did not allege the "nature of that damage, separate and apart from defending a non-frivolous claim." Id. at 250. Such is not the case here. See D. 89 ¶ 62. Specifically, Shields alleges as a result of the specific factual allegations noted above, that he has suffered "reputational and financial damages . . . amounting to many millions of dollars." Id. Shields also alleges that he has sustained "injury to his business, his business reputation, his personal reputation, expenditure of attorney's fees, and emotional distress." D. 89 ¶ 68. Shields alleges, for example, that the email that Guilfoile sent to colleagues and associates of Shields that included the press release disseminated by a public relations firm engaged by Guilfoile and that detailed the allegations in the lawsuit against Shields has harmed Shields' reputation. D. 89 ¶ 61. Intangible damages, such

9

as damage to one's reputation, are recoverable on a claim for abuse of process. Millennium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 650 (2010) (affirming judgment in favor of a plaintiff on an abuse of process claim and stating that plaintiff could recover for "intangible harm to [plaintiff's] reputation separate from and in addition to any loss of business or other pecuniary harm he may have suffered") (citations omitted). Additionally, attorneys' fees are sufficient to satisfy the damages element of an abuse of process claim. Id. at 645 (stating that "[t]he 'natural and probable' consequences of an abuse of process lawsuit include the costs incurred in successfully defending the charge" and "[a]s such, fees for defending such a lawsuit are considered compensatory damages, not attorney's fees") (quoting American Velodur Metal, Inc. v. Schinabeck, 20 Mass. App. Ct. 460, 470 (1985)).

## VI. Conclusion

For the foregoing reasons, the Court DENIES Guilfoile's motion to dismiss Shields' counterclaim, D. 91.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge